Our eighth case for today is Hill against Colvin. Mr. Forbes. May it please the court, my name is Randall Forbes and I represent the appellant who is the It sounded like she had a very demanding job. She was hauling around steel sheets that weighed a hundred pounds. Right and she did that for many years and I'm going to spend most of my time, unless you direct me otherwise, on how a person's long and arduous work history ought to be analyzed in relation to their credibility and there's not a lot of case law in this circuit on the issue and that's why I cited other circuits but the point is is that especially in this case the credibility as to her pain complaints in various joints on her body are important and you got to ask yourself if someone that put themselves through this kind of physical punishment throughout their life in order to maintain work would be fibbing when she finally can't work anymore and she's at least entitled to an analysis by the administrative law judge on that type of in relation to her continuous and arduous work history. So here's the problem, I mean it's just a generic problem in these cases. Credibility we always say is for the original finder of fact, in this case the ALJ, and it is one of those things that one resolves in a holistic way, right? You know you can make all the lists of factors you want and the next case is going to have some other consideration that probably legitimately bears on it. So I'm not sure how much we would accomplish if we said you ought to take into account this person's work history since I think people know that it's that it's an overall assessment. And this is coming from somebody who does lots of these cases at the administrative level. Despite all the regulations and despite as much as we try to standardize and systematize this, it's extremely arbitrary as to who the judge is and if these decisions have this certain amount of arbitrariness maybe that cannot be removed from the system, they ought to at least go through factors and explain themselves, especially in the cases where it's obvious that someone really, really tried hard to work. So you're saying to me, I think, because if I'm understanding you, that given the fact that there are a large number of ALJs out there, that it's actually affirmatively useful for the consistency of results to have maybe even a long checklist with some kind of list of things that they're all told we need to think about this. Don't they have that already in the regulations and the processing? I don't believe, and if I'm incorrect I apologize, but I don't believe that the regulations go into the kind of detail that I'm about to suggest. One is that the length of the work history, the difficulty of the work, especially if we're dealing with an unskilled work person. In other words, how much have they lifted, how much they punish their job or punish their body. The other thing is, have they had serious injuries that they've recovered from and then they've gone back to try to work again. And perhaps even after their work is over, they've tried to work again and have unsuccessful work attempts. I mean, it shows something. Now, what does all this have to do with credibility? Well, if an administrative law judge in this case, for example, says, oh, I believe her on her shoulder pain, but I disbelieve her when she testifies about, or not disbelieves her, but not totally believes her, when she testifies about her hip problems or back problems or I mean, some of them are better than others. I guess some people manage to come back to pretty much full functionality and other people don't. That's correct. So the question is, when it comes down to believability, why doesn't she get the benefit of the doubt when she essentially has done what Peyton Manning has and after every surgery goes out there and tries again, at great risk to himself. I told myself, don't use that illustration, but apparently I'm not listening. I don't think she's Peyton Manning, but anyway. But the point, that's the main point. Let them set forth the factors. Let them go through this analysis and then after they go through this analysis, let's see if it's really logical and they might even come to a different conclusion once they go through the analysis. So that's roughly the work history issues. I'll reserve the rest of my time if that's all right. All right, that's fine. Thank you. Ms. Wang-Grimm. Good morning, may it please the court. Mr. Forbes, I'm Jessie Wang-Grimm and I represent the Commissioner of Social Security in this matter. I wanted to first go ahead and address some of the concerns raised by Mr. Forbes regarding the work history and the ALJ's credibility assessment. Judge Wood pointed out correctly, it is a holistic analysis and we do look at many, many factors which the ALJ actually set forth first and then explained in pretty extensive detail in this case. And work history and the type of things that you can still do, you know, factor in the treatment, the objective medical evidence, as well as the activities of daily living, how well you've responded to treatment, innumerable factors that the ALJ did talk about in this case. She's a relatively unskilled person though. She just has a high school level education. That is correct, yes. And was 52 years old at the time of the ALJ's decision. She doesn't seem like somebody who, you know, can just sit down at an office and learn Excel. She's obese also. Well, I think that the ALJ looked at her allegations very carefully and looked at the examination findings and the innumerable medical opinions, none of which said that she was more limited than what the ALJ found. She had imaging results, diverse activities. She took care of several pets, drove to visit her family and friends on a regular basis, cooked, did a lot of housekeeping responsibilities, you know, running the vacuum cleaner, doing laundry. Look, people have to do housekeeping. Okay. Now we've made this point before. It doesn't penetrate the administrative law judge's skulls. You cannot generalize from what people do at home to what they can do in an eight-hour job under supervision. If you're in your home, you work when you feel up to it, you don't have regular hours, you don't have a supervisor, and of course you have to live. So there are people who are disabled but do things that they shouldn't do given their disability because they have no alternative. Well, I think in this case the ALJ didn't rely totally on the activities. You looked at the objective. No, but they shouldn't look at all to that. Look, I'd like to ask, this is I think the worst case I've ever seen for the vocational experts testimony and its handling of that testimony by the administrative law judge. So in all the other opinions I've seen, the administrative law judge will state in his or her opinion what the limitations are on this person and then will ask the vocational expert, in light of those limitations, what jobs can these people do and how and how many jobs are there locally, regionally, and nationally. Now the administrative law judge didn't do that. She didn't say anything about the limitations. All we have is we have the testimony of the vocational expert. So I want to ask you about some of the things that the vocational experts said. He said she's occasionally able to bounce. What does that mean? Occasionally able to stand on both feet and be balanced. So she's occasionally able to bounce and the can't balance? Well there's certain types of jobs, Judge Posner, that would require balancing for a certain period of time. What do you mean balancing for a period of time? She stands up straight for five minutes and falls over or what? I think that in this case it would be that she could sometimes maybe hold things and stand without falling for a certain period of time. Well obviously she can stand without falling. Is that what he means? That she can actually walk? Forget that. Occasionally she's able to crouch and crawl. Do you believe that? She's 5'7". She weighs 275 pounds. She's in her 50s. You really think that is part of her work? She's going to have a job which involves crouching or crawling? Just to clarify, Judge Posner, are you referring to the hypothetical question that the ALJ posed? No, I'm talking about the vocational expert's testimony. Ordinarily this material would appear, also appear, in the Administrative Law Judge's opinion, but it doesn't. We have the testimony. Oh, I was looking at the transcript where the hypothetical with the limitations you were concerned about were presented and then the VE testified in response to that. You're talking about in the decision? Look, it is a record of his testimony. Right? There's a record of his testimony. Correct. Now do you think that she is capable of a job which involves crouching and crawling? Well, it doesn't matter what I think. I think it's what the vocational expert is charged to do. Well, do you think that any but reasonable, sane person could think that this woman is capable of a job that involves crouching and crawling? Well, I think someone who babysits part-time two toddlers four days a week would probably be expected to do at least a little bit of crouching and crawling to get down to those little people's level, but that's what's in the record. In a job? Did she do a job? Well, that is her job right now in the testimony. What's the job right now? She is a part-time caregiver to two children. And she doesn't specifically say so, but these are small children. You think she crouches and crawls? She's playing with the kids? Now, it says she can climb ramps. Do you think that's true? The hypothetical question assumed that, yes. Do you think that's true? Well, I think that that's what the state reviewing doctor found that she could do and that's what the ALJ relied on to come up with this. Doesn't that depend on what the degree of the ramp is? Do you think she could climb a 45 degree ramp? I can't speculate as to that, Judge Posner. It's what's in the record as to what she can do. No, she could. It's like this. Now, it says she's never able to climb ladders, ropes, or scaffolds. Now, tell me, how does one climb a scaffold? I assume that it probably would be done on the side of the scaffold? You climb scaffolds on ladders. And since she can't climb ladders, there's no need to mention scaffolds. Of course, there are also scaffolds, like for window washers, no climbing. They're a flat surface. They're raised by ropes. One of the things he said that I thought particularly significant, yes. He says that she's supposed to be able to lift 20 pounds, but on the other hand, she's got this problem with her shoulder. And what he said was the difference between the dominant hand and non-dominant hand is not actually specified in the dictionary of titles. So I would rely upon my experience on how those jobs are actually performed to make that determination that she can do this work. Now, what is the experience that he is referring to? I think that, as he's described in his job qualifications, he has a background in rehabilitative services, as well as in some special education. He's consulted with many companies on how to accommodate individuals with disabilities. But what experiences has he had with people who have a dominant hand and a non-dominant hand? That's the relevant experience. What is the reason to think that he has ever had a case before involving a person with a dominant and non-dominant hand? He doesn't say he does. Well, I think his qualifications speak to the past rehabilitative... No, the qualifications don't show that he's actually confronted this particular problem. I don't know that he responded to anything relating to the dominant versus non-dominant exposure that he's had. But at the same time, Judge Posner, I think that the exploration of his experience with that could have been done by Mr. Forbes, who was at the administrative hearing. And he didn't raise any challenges. So given the lack of challenge to the V.E.'s testimony... That's a separate point. The point is, the vocational expert never gave any reason to think that he actually is competent to evaluate her ability to do light unskilled work without a functioning harm. Let me ask you just briefly about the jobs he suggests. Now, these are supposed to be light jobs and unskilled. So, the first is a dealer account investigator. This is defined in the D.O.T., a person who visits dealers to verify purchases financed by a bank against physical inventory of merchandise. Does that strike you as an unskilled job? Well, the D.O.T. describes the S.V.P. level of that job, so the amount of time taken that is required to learn it. Well, use your common sense. Is that an unskilled job? You'd have to go to the dealer, you'd have to look at his bank records, then somehow you'd have to inspect his physical inventory. Is this what an unskilled person does? I think it's described as such in the resource that the V.E. relied upon. Yes, it's described as such, yes. It's not requiring a great deal of time in which to learn it. Now, how about the counter clerk? The counter clerk's job is mysteriously defined as processing film for photo printing. I don't know how mysterious it is. I think it's probably someone who works at Walgreens behind the photo counter and receives orders from customers. Is my common sense interpretation of that? No, he's processing film. He's not just taking orders. Correct. Is that unskilled work? Have you ever processed film? Well, I have done it the old-fashioned way, and I think that now they probably have machines that do it automatically, and I assume that that's what this description is referring to. But I think that the vocational expert had the expertise to identify these jobs. I'm not the expert here, obviously. Now, light work is defined as work that requires standing or walking for about six hours in an eight-hour day. Given her obesity and her other conditions, is she actually capable of standing and walking six to eight hours a day, five days a week? Well, that's what the state agency reviewing physicians found, Judge. And also, she was looked at by treating and examining physicians, orthopedic specialists, and no one opined that she was more greatly limited than that. And I think the ALJ was able to rely on that as a result. This wasn't something he pulled out of his hat – or she, rather, excuse me. She had substantial… Judge, it did lead the vocational expert to consider whether certain sedentary jobs that she could perform. Now… While you're looking, I just wanted to ask this question. The ALJ rejected Hill's testimony in part because she stopped taking narcotic pain relievers and she only complained about back pain intermittently. You recall that part of that? That is correct, yes, Judge. But the ALJ – I don't see anywhere where the ALJ dealt with the possible explanations for doing that because she didn't have health insurance. The doctor was worried about her being addicted to these painkillers. Correct. And that back and neck pain could have been related to her shoulder and hip pain, which the ALJ conceded – or not conceded, but found that she really did have that shoulder pain. Left shoulder pain. Yes. Right, not on the right, though. I think the ALJ… Which she complained about that many times to the doctor. And that was accommodated. The ALJ, you know, found her left shoulder allegations to be credible and did provide limitations for that in the RFC. Regarding your – I'm sorry. Yeah, but all I'm saying is in terms of the back pain and everything, which could clearly be related to the shoulder pain, part of what the ALJ said was a problem was she didn't see the doctor regularly, she wasn't using the drugs, and there's a reasonable explanation for that which was not addressed. But she saw – the record reflects at least examinations into March of 2012 with Dr. Smith, her treating primary care physician, and at none of those examinations did she ever complain of the type of low back pain that she's alleged now. So I think that there were opportunities for her to bring those up, and the examinations didn't reveal any types of findings that would have supported the extent of pain she was talking about. And the ALJ also relies on imaging results from the lumbar spine, the MRI results, that do not show significant limitations. And that was not her playing the doctor. It was based on the state agency reviewer's understanding. And then I just wanted to respond to your earlier question. Well, if you would just indulge – the Chief Judge indulged me for a minute. I have two very brief questions for you. One is, one of the judges, he says, one of the jobs the VE said she could perform is a semiconductor bonder. This is defined as tending an automatic bonding machine that bonds gold or aluminum wire to integrated circuit dies to connect circuitry to package leads. Does that sound like an unskilled job? Okay. You are talking about possibly the sedentary jobs that she testified to? Yes. Okay. Just give me one quick second for that. Again, this is in the VE's scope, Wheelhouse, not mine. I mean, I think that she did previously work for a longtime judge as a press operator, which did require – As a what? And heavy machinery, which certainly required some degree of skill to understand how that worked. So I don't think it's a great leap in logic. But this is supposed to be an – well, this is supposed to be a sedentary. Sedentary is below light work. That is correct. And the other is a registration clerk. Now, the DOT number that the VE gave for registration clerk is, in fact, an election clerk. Okay. Do you think an election clerk – do you think that's a full-time job? I don't know. Oh, come on. Do you think there's an election every week? I can't speak to exactly what – You can't speak to – do you have any idea of the frequency of elections? I certainly do, Judge, but I don't know. Well, you know, then, that an election is not held every week. Of course, but – So that being an election clerk could not be full-time gainful employment. I don't know the exact requirements of such a position or whether there would be other jobs in – Why don't you know the requirements? Don't you ever – do you ever read the evidence? Aren't you supposed to understand what your witnesses are talking about? Well, certainly, but – You think that if a VE improbably defines election clerk as full-time gainful employment, you'd check into that and see whether that is conceivably the case. I can only say that. Or whether he simply cited the wrong number. He may have, but – Which is far more plausible. Well, don't you check the numbers of the – don't you check your witnesses' evidence to see if it's accurate? I did with respect to the jobs that the ALJ actually relied upon in this case, which were the light jobs. And certainly, there were plentiful numbers of those identified. No, there weren't. For the light – You mean within the job categories, the three or so? Yes, that is correct, on transcript 65. I think that 4,000 in the state, 50,000 regionally for a counterclerk, definitely would qualify under the agency's definition of significance. The counterclerk is this photo finish. Correct. That's the person at Walgreens who presses the button and has the digital pictures come out. This is my interpretation, yes. That's what you think, okay. I did want to refer back to Judge Williams' question about the insurance situation. And I think the ALJ did discuss that in the overall decision and acknowledged that that was an issue, but also noted that the over-the-counter medications that she was receiving did help reduce her pain significantly. So I think it was considered and on balance the ALJ concluded that the medications that she still had access to that weren't going to be of an addictive nature did alleviate a great deal of her symptoms. If there are any other questions, otherwise I will ask for an affirmance and rest on our brief. Thank you. Thank you very much, Ms. Wang-Grimm. We appreciate your defense of the DOT and everything else, and we'll consider it. Anything further, Mr. Forbes? Nothing unless you have questions. Apparently not. Okay, the court is going to take a very brief recess.